*E-filed on* 04/28/09

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| VEDATECH K.K. and MANI SUBRAMANIAN,<br><br>    Plaintiffs,<br><br>        v.<br><br>CRYSTAL DECISIONS, INC., et al.,<br><br>    Defendants. | No. C-03-04578 RMW<br><br>ORDER GRANTING MOTION TO DISMISS<br><br>**[Docket Nos. 115, 123, 124, 125]** |

Plaintiffs Mani Subramanian ("Subramanian") and Vedatech, K.K. ("Vedatech") filed this suit in October of 2003 alleging that Crystal Decisions, Inc. and related defendants (collectively "Crystal") fraudulently induced Subramanian to enter an agreement settling a business dispute. On July 27, 2004, this court stayed the action pending resolution of an English proceeding, already under way, which would confront many of the same issues. The English action has concluded, and Crystal now moves to dismiss the present action. Subramanian opposes the motion to dismiss. For the reasons stated below, the court grants the motion to dismiss with prejudice.

ORDER GRANTING MOTION TO DISMISS—No. C-03-04578 RMW
JAS

# I. BACKGROUND

Before proceeding to the relevant facts and procedural history, the court makes a brief comment about Mr. Subramanian, who is *pro se* in this case. Mr. Subramanian has filed numerous motions and voluminous papers with this court. The court finds them difficult to understand and of uncertain reliability. At the motion to dismiss stage, the court takes all allegations in the complaint as true and construes them in the light most favorable to the non-moving party. *Sprewell v. Golden State Warriors,* 266 F.3d 979, 988 (9th Cir. 2001). But the court need not accept allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *Id.* In what follows, the court makes significant use, out of necessity, of the factual background provided in defendants papers.

According to Justice Patten's Judgment of May 9, 2007 ("May 2007 Judgment"), Subramanian formed Vedatech, a Japanese company, in 1991 as part of a business designed to assist United States and European software companies in introducing their products in Japan. May 2007 Judgment ¶ 2 (attached to Declaration of Christopher Pugh ("Pugh Decl.") at Ex. A). In 1997, Vedatech commenced an action against Crystal in England, seeking payment for work carried out for Crystal in Japan in 1995. *Id.* A trial was held in London in that action, and presiding Justice Jacob dismissed all claims arising out of breach of contract, but concluded that potential liability might exist under an unjust-enrichment theory. *Id.* Justice Jacob also ordered the parties to submit to mediation. *Id.* On August 29, 2002 the parties signed a mediation agreement, which provided, "This Agreement shall be governed by, construed and take effect in accordance with, English Law. The courts of England shall have exclusive jurisdiction to settle any claim, dispute or matter of difference which may arise out of or in connection with the mediation." Declaration of Gillian Eastwood In Support of Motions to Stay ¶ 7 ("Eastwood Decl.")(Docket No. 36)(attaching the Mediation Agreement at Ex. C). At the mediation on August 30, 2002, the parties executed a settlement agreement which stated "This Agreement shall be governed by an interpreted in accordance with the laws of England and Wales. The Parties agree that the Courts of England and Wales have exclusive jurisdiction to settle any dispute that may arise with the validity, effect, interpretation or performance of or the legal relationships established by this Agreement or

ORDER GRANTING MOTION TO DISMISS—No. C-03-04578 RMW
JAS                                                                                              2

otherwise in connection with this Agreement." *Id.* (attaching the Arbitration Agreement at Ex. D). The settlement agreement provided that Crystal would pay Vedatech and Subramanian $970,000. May 2007 Judgment ¶ 7.

On September 24, 2002, Subramanian notified Crystal that he would not be providing bank information necessary to issue the settlement payment because he believed that Crystal had obtained his consent to the settlement agreement fraudulently. *Id.* at ¶ 10. When Subramanian first applied in the original proceeding to set aside the settlement agreement, Justice Jacob explained that Subramanian would have to allege and prove fraud in order to set aside the agreement, and that such an allegation and proof would require a separate proceeding. *Id.* at ¶ 19. As a result, Justice Jacob stayed the original action to allow the action to set aside the Settlement Agreement to continue. *Id.* at ¶ 20. Subramanian appealed that order, and two of three members of the appellate panel agreed that the Settlement Agreement challenge should proceed in a separate action. *Id.* at ¶ 22.

Subramanian apparently never brought the separate action. Pugh Decl. at ¶ 8. As a result, Crystal brought a new action, seeking 1) a declaratory judgment that the Settlement Agreement was valid and binding, and 2) an injunction against Subramanian bringing suit elsewhere to challenge the Settlement agreement. May 2007 Judgment at ¶ 23. Subramanian filed the instant action on October 10, 2003, and Crystal then sought an injunction restraining Subramanian from continuing these proceedings. *Id.* at ¶ 27. On July 24, 2004, this court stayed the action because of the apparent overlap between the present action and the English one.

The second action continued thereafter, the details of which are not germane to the present motion. As part of those proceedings, Subramanian was ordered to pay Crystal £15,600 in costs. Justice Patten ordered Subramanian to pay the amount by December 13, 2006, or he would be barred from defending the action and Crystal would be entitled to their requested relief. *Id.* at ¶ 43. Justice Patten also offered Subramanian a longer period of time in which to raise the money, but Subramanian refused the additional time. *Id.* After Subramanian and Vedatech failed to pay, Justice Patten nonetheless heard from Subramanian on the appropriate scope of relief due to Crystal in default. *Id.* at ¶ 43. In the May 2007 Judgment, Justice Patten writes:

> It seems to me that [Crystal is] entitled to the declaration that the Settlement Agreement is valid and enforceable against the Defendants. There is nothing in the

> Agreement itself upon which to base any challenge to its enforceability and as a result of the de-barring order made the Defendants are not in the position to adduce evidence in order to substantiate the notices of rescission which were served. In any event, for the reasons explained earlier, rescission based on innocent or negligent misrepresentation would not suffice as the basis for setting aside the Agreement. It seems to me that [Crystal is] therefore entitled in justice to a declaration from the court following its determination of these proceedings (albeit in summary form) that the Settlement Agreement is valid and enforceable. Without it they are likely in my judgment to face further challenges by [Subramanian] which the finality of a declaration may avoid.

*Id.* at ¶ 52. With respect to the anti-suit injunction, there was dispute as to whether a previously existing anti-suit injunction should be allowed to expire or become permanent, and whether any anti-suit injunction should extend to the present action. Justice Patten concluded first that Crystal was "entitled to a permanent injunction in execution of the Settlement Agreement." *Id.* at ¶ 60. Next, Justice Patten considered whether the anti-suit injunction should extend to this action:

> Mr. Subramanian also contended that it would be wrong to prevent him and Vedatech from resorting to action in California because the unfair competition claim is a remedy only available under California law, but as explained earlier, that claim turns on the very same facts and issues and is covered by the terms of the Settlement Agreement. There are no reasons demonstrated for allowing Mr. Subramanian to depart from the provisions they have agreed and an injunction is the appropriate remedy for securing their compliance. I propose therefore to continue to anti-suit injunction and to order [Subramanian and Vedatech] to withdraw the existing California proceedings.

*Id.* at ¶ 61. On May 9, 2007, the High Court of Justice, Chancery Division entered a judgement that the Settlement Agreement generally and the exclusive jurisdiction clauses in particular were valid and enforceable. Order for Judgment and Permanent Anti-Suit Injunction 2-3 (attached to Pugh Decl. at Ex. S)(hereinafter "May 2007 Order"). The judgment also ordered Subramanian and Vedatech to withdraw from this suit and commence no other suits outside England and Wales arising out of the Mediation or Settlement Agreements. *Id.* at 3. Subramanian sought permission to appeal, and on June 10, 2008, the Court of Appeal refused the application. Pugh Decl. at Ex. T.

On August 22, 2008, Crystal moved in this court to dismiss Subramanian's complaint. On September 26, 2008, Subramanian moved to strike the motion to dismiss, to amend his original complaint, and for a preliminary injunction against enforcing any anti-suit injunction. On September 29, Subramanian moved for an extension of time to allow him to adequately oppose the motion to dismiss. The court granted that motion on October 4, 2008, rescheduled the hearings, and reminded Subramanian of the page limits imposed by Local Rule 7-2. On October 7, Subramanian

moved for leave to exceed the page limits imposed by the Local Rule 7-2. The court denied that motion, and reminded Subramanian of the limitations Local Rule 7-5 imposes on the content of declarations: "An affidavit or declarations may contain only facts, must conform as much as possible to the requirements of FRCivP 56(e), and must avoid conclusions and argument." Civ. L.R. 7-5(b). In what follows, the court considers Subramanian's twenty-five page opposition to the motion to dismiss and other moving papers, but disregards his additional declarations, which continue argument on the motion.

## II. ANALYSIS

### A. Crystal's Motion to Dismiss

Subramanian's suit seeks relief from alleged frauds in the mediation and settlement of a dispute arising out of a consulting arrangement between Vedatech and Crystal Decisions. Crystal moves to dismiss this suit on three grounds. First, Crystal argues that the mediation and settlement agreements that Subramanian challenges include forum-selection clauses which assign exclusive jurisdiction over the present case to English courts. Second, Crystal contends that the English court's resolution of the same issues bars this action under the doctrine of *res judicata*. Finally, Crystal argues that this court should give deference, on grounds of comity, to the judgment of the English court and, in particular, the anti-suit injunction barring further suits. The court considers first whether the judgment of the English Court should be enforced on comity grounds, and, finding that the suit is barred, does not reach Crystal's other grounds for dismissal, which also appear meritorious.

In diversity cases, enforceability of judgments of courts in other countries is generally governed by the law of the state in which enforcement is sought. *Yahoo! Inc. v. La Lique Contre Le Racisme Et L'Antisemitisme*, 433 F.3d 1199, 1212 (9th Cir. 2006). California has adopted the Uniform Foreign Money-Judgments Recognition Act, but no state statute governs the enforcement of legal conclusions or injunctions of foreign courts. *Id.* at 1213. In *Bank of Montreal v. Kough*, 612 F.2d 467 (9th Cir. 1980), the court applied Canadian law in considering whether to enforce a money judgment from the Supreme Court of British Columbia. *Id.* at 472. But *Kough* relied on *Estate of Cleland*, 119 Cal.App.2d 18, 20 (1953) in applying the law of the state of the judgment to

be enforced. *Estate of Cleland* applied the law of Chihuahua (a state in Northern Mexico) under section 1915 of the California Code of Civil Procedure, now repealed, which provided that "a final judgment of any tribunal of a foreign country having jurisdiction, according to the laws of such country, to pronounce the judgment, shall have the same effect as in the country where rendered, and also the same effect as final judgments rendered in this state." *Id.* at 20. The comments to the repeal of section 1915 state that "[w]ith the repeal of Section 1915, the enforcement of foreign nation judgments is determined by other statutory provisions and the decisions of the courts under the common law and private international law." West's Ann.Cal.C.C.P. § 1915, Law Revision Commission Comment, 1974 Repeal.

Given the lack of case law in California dealing with the enforceability of foreign judgments, the *Yahoo!* court looked to the Restatement (Third) of Foreign Relations, which is often cited by California courts as a source of law. 433 F.3d at 1213. Under the Restatement, an American court will not enforce a judgment if "the cause of action on which the judgment was based , or the judgment itself, is repugnant to the public policy of the United States or the State where recognition is sought." *Id.* at 1214 (quoting Restatement (Third) of Foreign Relations § 482(2)(d)).

In *British Midland Airways Ltd v. International Travel Inc.*, 497 F.2d 869 (9th Cir. 1974), the court enforced a default judgment, similar to the one in this case, issued by the English High Court of Justice in favor of British Midland Airways. *Id.* at 871. International Travel argued that the judgment should not be enforced on comity grounds because it had not been afforded due process in the British courts. Although British Midland sought to enforce the judgment in Washington, the court found it unnecessary to consider whether Washington law required enforcement, stating that "English procedure comports with our standards of due process. It has long been the law that unless a foreign country's judgments are the result of outrageous departures from our own [notions] of 'civilized jurisprudence,' comity should not be refused." *Id.* (citing *Somportex Ltd v. Philadelphia Chewing Gum Corp.*, 453 F.2d 435, 444 (3rd Cir. 1971) and *Hilton v. Guyot*, 159 U.S. 113 (1895)).

When one party seeks to enforce an anti-suit injunction, additional factors are relevant, such as the party's motive in seeking the anti-suit injunction and whether the alternative forum has

refused to exercise comity.[1]  *See Dependable Highway Express, Inc. v. Navigator's Ins. Co.*, 498 F.3d 1059, 1068-69 (9th Cir. 2007); *E & J Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 995 (9th Cir. 2006) (citing *Laker Airways Ltd. v. Sabena Belgian World Airlines*, 731 F.2d 909 (D.C.Cir. 1984)).  In *Dependable Highway Express*, the court noted that plaintiff had filed suit in the United States before defendants brought its anti-suit injunction action in English court. 498 F.3d at 1068. And "the clear thrust of Navigator's English action was to halt Dependable's domestic proceedings - a tactic frowned upon . . ." *Id.*  The court concluded: "Comity is not required where the British Action was filed after the U.S. action for the sole purpose of interfering with the U.S. suit." *Id.*

In this case, the judgment of the English court should be afforded comity.  The record of English decisions in this case makes clear that Subramanian was given, over the course of ten years, ample opportunity to make an adequate presentation in the English forum.  And indeed, many of the arguments Subramanian offers here were previously made before the English court and rejected. Beyond disagreeing with the outcome, Subramanian does not raise any genuine argument that the procedure afforded him by the English courts was deficient or fundamentally unfair in any way. And the anti-suit injunction here was sought not to interfere with the present action, but to preserve the original English forum.

The judges of the English courts have undertaken a detailed and careful inquiry into the merits of Subramanian's claims, and this court sees no reason to disturb their judgment as to the enforceability of the Settlement Agreement or the propriety of the anti-suit injunction.

**B.    Subramanian's Motions**

Subramanian's motion to strike is, in substance, an extended opposition to Crystal's motion to dismiss.  Any relevant arguments in the motion to strike are taken into account by the court's analysis above, and the motion is denied.

---

[1] The exercise of comity by the alternative forum has long been relevant to comity analysis.  In *Hilton v. Guyot*, the Supreme Court refused to defer to a French judgment because France generally did not give conclusive effect to American ones. 159, U.S. at 227.  Instead, the court held that the French judgment constituted prima-facie evidence of the plaintiff's claim.  *Id.*  This doctrine, known as "the rule of reciprocity" once "proved of apparent appeal to a great many legal systems" but has since fallen out of favor.  Smit, *International Res Judicata and Collateral Estoppel in the United States*, 9 U.C.L.A. L. REV. 44,49 (1962) (citing Reizler, INTERNATIONALES ZIVILPROZESSRECHT § 56 (1949); Lorenzen, *The Enforcement of American Judgments Abroad*, 29 YALE L.J. 188, 199 (1919)).

Subramanian also moves for a preliminary injunction against Crystal enforcing the anit-suit injunction. In order to obtain a preliminary injunction, "at an irreducible minimum, the moving party must demonstrate a fair chance of success on the merits, or questions serious enough to require litigation." *Guzman v. Shewry*, 552 F.3d 941, 948 (9th Cir. 2009). Subramanian has failed on the merits, and the motion for a preliminary injunction is therefore denied.

Subramanian also moves to amend his complaint. Leave to amend need not be granted where the amendment is futile. *AmerisourceBergen v. Dialysist West, Inc.*, 465 F.3d 946, 951 (9th Cir. 2006). Subramaninan's proposed amended complaint is also foreclosed by the English court's judgment, and is therefore futile. The motion to amend is denied.

### III. ORDER

For the reasons stated above, Subramanian's motion to strike, motion for a preliminary injunction, and motion to amend are denied. The court grants Crystal's motion to dismiss with prejudice.

DATED:     04/28/09

*Ronald M. Whyte*
RONALD M. WHYTE
United States District Judge

**Notice of this document has been electronically sent to:**

**Plaintiff:**

Mani Subramanian
c/o Robert L. Oca
P. O. Box 12231
San Francisco, CA 94112

**Counsel for Defendant:**

Stephen J Kottmeier             sjk@hopkinscarley.com

Counsel are responsible for distributing copies of this document to co-counsel that have not registered for e-filing under the court's CM/ECF program.

**Dated:**   04/28/09                                    JAS
                                                         **Chambers of Judge Whyte**